UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEONARD MALEWICZ, *et al.* )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>CITY OF AMSTERDAM, )<br>)<br>Defendant. )<br>_____) | Civil Action No. 04-0024 (RMC) |

**STATEMENT OF INTEREST OF THE UNITED STATES**

Pursuant to 28 U.S.C. § 517,[1] the United States respectfully submits this Statement of Interest to attend to its interests in connection with this action. The United States hereby addresses the implications of plaintiffs' claims for the Mutual Educational and Cultural Exchange Program administered by the Department of State and established by Congress pursuant to Title 22 Chapter 33 of the United States Code.

Until the present proceeding, 22 U.S.C. § 2459 has served as an effective and efficient means for protecting visiting exhibits from litigation. In this case, however, the plaintiffs contend that the expropriation exception in the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605(a)(3), provides a jurisdictional basis for their claims concerning 14 works that were imported into this country under a grant of immunity from seizure under section 2459.

---

[1] "The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." 28 U.S.C. § 517.

Plaintiffs argue that the physical presence of the artwork in this country in connection with a temporary exhibition – which under section 2459 must be "administered, operated, or sponsored" by the domestic institution on a non-profit basis – satisfies the exception's requirement that the property be "present in the United States in connection with a commercial activity carried on in the United States by the foreign state."

The United States is aware of no plaintiff that has previously sought to base jurisdiction solely upon art brought into this country under a grant of immunity from seizure. This unprecedented approach has introduced great uncertainty as to whether sovereign lenders will face greater litigation exposure simply through the introduction of an immunized exhibit into the United States. Accordingly, the United States submits this statement to inform the Court concerning the background and purpose of section 2459 and to present its concerns as to the potential effects of plaintiffs' lawsuit upon the interests that section 2459 is designed to foster.

## DISCUSSION

1. To Establish Jurisdiction Over a Foreign State, Plaintiffs Rely on the Exhibition of the State's Artwork By a U.S. Borrower Under a Grant of Immunity

Plaintiffs in this action allege that the City of Amsterdam took 14 works of art by the artist Kazmir Malevich in violation of international law. Amended Complaint ("Compl.") ¶ 4. Their complaint asserts various causes of action, including replevin, Compl. ¶¶ 45-47, and based on these causes of action, plaintiffs ask the Court to order the return of the artwork to the plaintiffs. Compl., Prayer for Relief ¶¶ 1, 2, 4, and 5.

The works at issue were imported into this country in 2003 to be part of a temporary exhibition of artwork at the Guggenheim Museum in New York City and the Menil Collection in

Houston. Memorandum of Points and Authorities in Support of the City of Amsterdam's Motion to Dismiss the Amended Complaint in its Entirety ("Def. Mem.") at 4. Following consideration of the request that the artwork be granted immunity, as well as a request by plaintiffs' counsel that immunity not be granted, the Department of State granted the application based on the determination that the objects were of cultural significance, and that the temporary exhibition of the works within the United States was in the national interest. *See* 68 Fed. Reg. 17852-01, April 11, 2003. Under 22 U.S.C. § 2459, such artwork was immune from seizure and other forms of judicial process while in this country.[2] Plaintiffs filed their complaint in this action two days prior to the closure of the exhibit, and the artwork was returned to Amsterdam according to a prearranged schedule, immediately following that closure, and prior to the City's being served

---

[2] The full text of the statute provides that

> [w]henever any work of art or other object of cultural significance is imported into the United States from any foreign country, pursuant to an agreement entered into between the foreign owner or custodian thereof and the United States or one or more cultural or educational institutions within the United States providing for the temporary exhibition or display thereof within the United States at any cultural exhibition, assembly, activity, or festival administered, operated, or sponsored, without profit by any such cultural or educational institution, no court . . . may issue or enforce any judicial process, or enter any judgment, decree, or order, for the purpose or having the effect of depriving such institution, or any carrier engaged in transporting such work or object within the United States, of custody or control of such object if before the importation of such object the President or his designee has determined that such object is of cultural significance and that the temporary exhibition or display thereof within the United States is in the national interest, and a notice to that effect has been published in the Federal Register.

with process. *See* Complaint, filed January 9, 2004; Def. Mem. at 4; Reply Memorandum of Points and Authorities in Support of the City of Amsterdam's Motion to Dismiss the Amended Complaint in its Entirety at 4.

Notwithstanding plaintiffs' prayers for relief – including in particular, their cause of action for replevin and prayer that the Court order the return of works "currently present in the United States," Compl. ¶¶ 45-47 and Prayer for Relief ¶ 1 – it is undisputed that plaintiffs could not seek to seize the artwork while it was in this country under a grant of immunity. It also appears to be undisputed that if plaintiffs had filed their lawsuit prior to the importation of these works, or following their departure, the Court would have had no jurisdiction over plaintiffs' claims. Compl. ¶¶ 3-7. Plaintiffs are therefore using the window of opportunity afforded by the Malevich exhibition as the jurisdictional hook for their claims.

2. <u>The Protections of Section 2459 Play an Integral Role in Promoting Cultural Exchange</u>

Section 2459 has long played and continues to play an integral role in fostering cultural exchange. In the past ten years, as indicated by a search of the Westlaw Federal Register database, the United States Information Agency and Department of State have published immunity notices under section 2459 for more than 600 exhibits. More than 900 such notices have been published since 1980. These notices encompass a wide variety of cultural objects displayed at temporary exhibitions throughout the country. The past ten notices alone, for example, have addressed cultural objects to be displayed at 17 different museums in 11 different

4

cities.[3] As stated *supra*, these notices reflect the determinations of the Department of State that the imported objects were of "cultural significance" and that the exhibitions were "in the national interest."

Congress' stated purpose in enacting section 2459 was "to encourage the exhibition in the United States of objects of cultural significance which, in the absence of assurances such as are contained in the legislation, would not be made available." H. Rep. No. 1070, 89th Cong., 1st Sess. 2-3. At the time section 2459 was enacted, such objects had become more vulnerable to lawsuits as a result of enactment of the Second Hickenlooper Amendment, 22 U.S.C. § 2370(e)(2), approximately one year prior to section 2459. That Amendment sharply restricted application of the Act of State doctrine as a bar to jurisdiction over claims to property allegedly

---

[3] *See* 69 Fed. Reg. 70747-02, December 7, 2004 ("Tall Trees at the Jas de Bouffan, J. Paul Getty Museum, Los Angeles); 69 Fed. Reg. 70747-01, December 7, 2004 ("Rembrandt's Late Religious Portraits," National Gallery of Art, Washington. D.C., J. Paul Getty Museum, Los Angeles); 69 Fed. Reg. 70746-01, December 7, 2004 ("AndrE KertEsz," National Gallery of Art, Washington, D.C., J. Paul Getty Museum, Los Angeles); 69 Fed. Reg. 69009, November 26, 2004 ("Raphael's La Fornarina," Frick Collection, New York, the Museum of Fine Arts, Houston, the Indianapolis Museum of Art); 69 Fed. Reg. 68436-02, November 24, 2004 ("In the Russian Tradition: A Historic Collection of 20th Century Russian Paintings," Smithsonian Institution S. Dillon Ripley Center International Gallery, Washington, D.C., Museum of Russian Art, Minneapolis, Minnesota); 69 Fed. Reg. 65491-02, November 12, 2004 ("Saint John the Baptist" and "Saint Onuphrius," Metropolitan Museum of Art, New York); 69 Fed. Reg. 64803-01, November 8, 2004 ("Salvador Dali," Philadelphia Museum of Art); 69 Fed. Reg. 63566, November 2, 2004 ("Retratos: 2,000 Years of Latin American Portraits," exhibitions at the El Museo del Barrio, New York City, the Bass Museum of Art in Miami Beach, Florida, the National Portrait Gallery in Washington, D.C., and the San Antonio Museum of Art); 69 Fed. Reg. 62929, October 28, 2004 ("Hero, Hawk, and Open Hand: American Indian Art of the Ancient Midwest and South," exhibitions at the Art Institute of Chicago, the Saint Louis Art Museum, and the Smithsonian Museum of Natural History, Washington, D.C.); 69 Fed. Reg. 62739-01, October 27, 2004 ("Jacob van Ruisdael: Master of Landscape," exhibitions at the Los Angeles Country Museum of Art and the Philadelphia Museum of Art).

taken in violation of international law. The immunity provided by section 2459 thus addressed the threat to cultural exchange posed by the increased vulnerability to lawsuits of foreign artwork on temporary loan to this country's cultural institutions. Indeed, at the time of the enactment of section 2459, an exchange was pending between a Soviet Museum and the University of Richmond, and "[a]s a condition to the loan, the Soviets insisted on a grant of immunity from seizure as protection against former Soviet citizens who had valid claims to the title of the works." Rodney M. Zerbe, *Immunity from Seizure for Artworks on Loan to United States Museums*, 6 NW. J. Int'l L. & Bus. 1121 n.21 (1985).

### 3. Permitting Jurisdiction Based Solely Upon an Immunized Exhibition Threatens the Cultural Benefits Provided By Section 2459

As the foregoing reflects, the cultural benefits of section 2459 depend upon providing a sufficient level of assurance to foreign lenders that participating in an immunized exhibit will not expose them or their artwork to litigation in the United States. In this case, for example, the City asserts that it relied upon this grant of immunity in making the works available. *See* 68 Fed. Reg. 17852-01, April 11, 2003; Def. Mem. at 5. The United States is thus concerned that permitting jurisdiction over a foreign state in such cases threatens to undermine significantly the interests that section 2459 was designed to foster and to create friction in U.S. relations with other countries.

Section 1605(a)(3) of the FSIA, first effective in 1977, provides for the possibility of *in personam* jurisdiction over foreign states in expropriation cases without the need for the prior attachment of the property in question. H.R. Rep. 94-1487, 94th Cong., 2d. Sess. at 8, *reprinted in* 1976 U.S.C.C.A.N. 6604, 6606. Instead, it requires a sufficient nexus with the United States

6

to provide fair notice to foreign states that they are submitting themselves to U.S. jurisdiction and abrogating their sovereign immunity. Most relevant for present purposes, section 1605(a)(3) requires that the property at issue be "present in the United States in connection with a commercial activity carried on in the United States by the foreign state."

Foreign states are unlikely to expect that this standard is satisfied by a loan of artwork for a U.S. Government-immunized exhibit that must be carried out by a borrower on a non-profit basis. The possibility that such a minimal level of contact will necessarily suffice to provide jurisdiction threatens to chill the willingness of sovereign lenders to participate in the section 2459 program. Just as a foreign lender will be less likely to send valuable artwork to this country if the artwork is subject to seizure while it is here, such a lender will be discouraged from lending such works if the loan will provide the sole jurisdictional basis for an expropriation lawsuit that could not have occurred in the absence of the loan.[4] Pursuant to the Supreme Court's invitation last term for the Executive branch "to express its opinion on the implications of exercising jurisdiction over *particular* petitioners in connection with *their* alleged conduct," it would be appropriate to give these concerns great weight "as the considered judgment of the Executive on a particular question of foreign policy." *Republic of Austria v. Altmann*, 124 S. Ct. 2240, 2255 (2004) (emphasis in original).[5]

---

[4] Plaintiffs assert that any lawsuit in the Netherlands would likely be barred by that country's statute of limitations. Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss Plaintiffs' Amended Complaint at 27-31. If so, plaintiffs are also asking this Court to revive a lawsuit that otherwise would be moribund.

[5] Defendant's motion to dismiss asserts various bases for dismissing this lawsuit,
(continued...)

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court consider the interests of the United States where appropriate in evaluating defendant's motion to dismiss.

Dated: December 22, 2004.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JOSEPH H. HUNT
Branch Director

Of Counsel:

VINCENT M. GARVEY
Deputy Branch Director

Jonathan B. Schwartz
Deputy Legal Adviser
Office of the Legal Adviser
United States Department of State

SAMUEL C. KAPLAN
U.S. Department of Justice, Civil Division
Federal Programs Branch
Mail:   P.O. Box 883
        Washington, DC  20044
Street: 20 Massachusetts Ave., NW, Room 7302
        Washington, DC  20001
Phone  (202) 514-4686
Fax    (202) 616-8202
Email  samuel.kaplan@usdoj.gov

---

[5](...continued)
including *forum non conveniens*, the statute of limitations, and sovereign immunity. While the United States does not at this stage address defendant's particular claims, it notes that in joining the Court's recent opinion upholding the retroactive application of the Foreign Sovereign Immunities Act to conduct occurring prior to its enactment, Justices Breyer and Souter recognized the importance of statutes of limitations and defenses such as *forum non conveniens* in protecting against "'vast and potential liability for expropriation claims in regards to conduct that occurred generations ago. . . .'" *Altmann*, 124 S. Ct. at 2261-62 (Breyer, J., and Souter, J., concurring) (*quoting id.* at 2271).

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| LEONARD MALEWICZ, et al. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CITY OF AMSTERDAM, )<br>)<br>Defendant. ) | No. 04-0024 (RMC) |

## CERTIFICATE OF SERVICE

I hereby certify that, on December 22, 2004, the foregoing Statement of Interest of the United States was served by first-class mail on the following persons:

Lawrence M. Kaye, Esq.
Howard N. Spiegler, Esq.
HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, New York 10016
Tel.: (212) 592-1400
Fax: (212) 592-1500
Attorneys for Plaintiffs

Christopher M. Curran, Esq.
Nicole E. Erb, Esq.
WHITE & CASE LLP
601 13th St NW
Washington, DC 20005
Tel. (202) 626-3600
Fax : (202) 639-9355
Attorneys for Defendant

Thomas R. Kline, Esq.
L. Eden Burgess, Esq.
Jennifer L. Spina, Esq.
ANDREWS KURTH LLP
1701 Pennsylvania Ave., N.W.
Suite 300
Washington, D.C. 20006
Tel.: (202) 662-2700
Fax: (202) 662-2739
Attorneys for Plaintiffs

_____
Samuel C. Kaplan